IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THERESA BROOKS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 14-623 |
| CITY OF PHILADELPHIA | : | |

**MEMORANDUM**

**SURRICK, J.** **FEBRUARY 6, 2015**

Presently before the Court is the Motion for Summary Judgment (ECF No. 23) filed by Defendant, City of Philadelphia. For the following reasons, Defendant's Motion will be granted in part and denied in part.

## I. BACKGROUND

This is an action in which Plaintiff, Theresa Brooks, brings claims of gender and race discrimination and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Title VII), and the Pennsylvania Human Relations Act, 43 P.S. § 955, *et seq*. (PHRA). (Compl. Counts I and III, ECF No. 1.) Plaintiff also brings a claim for retaliation, in violation of Title VII. (*Id*. at Count II.)

In deciding this Motion for summary judgment, we must view the facts and inferences in a light most favorable to the Plaintiff, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, we must "not resolve factual disputes or make credibility determinations." *Siegel Transfer, Inc. v. Carrier Express Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).[1]

[1] We make this observation at this point because along with its Motion for summary judgment, Defendant has filed what it characterizes as an Undisputed Statement of Material

The record reflects that Plaintiff joined the Philadelphia Police Department in 1996. (Brooks' Dep. 13, Def.'s Mot. Ex. 1.) In 2005, Plaintiff was assigned to the Narcotics Strike Force (NSF), a specialized unit of the police department charged with policing illicit drug sales within the city. (*Id*. at 19.) Plaintiff remained with the NSF from 2005 until October 2013. (*Id*. at 21.) During her time with the NSF, Plaintiff was the only female officer who worked on the street. (*Id*. at 109-10.) Plaintiff's claims are related to her time spent assigned to the NSF.

According to Plaintiff, the environment within the operations room at the NSF was overly hostile towards female employees. Plaintiff testified that her male colleagues would watch pornographic films on the television set in the operations room at the NSF. (*Id*. at 151-52.) Her male colleagues would laugh at Plaintiff while showing pornographic films, and pornography was considered "the norm" at the NSF. (*Id*. at 160, 162.) Plaintiff testified that the operations room was a "locker room" of sorts where Plaintiff was subjected to her male colleagues changing clothes in front of her while she worked. (*Id*. at 47; Brooks' Continued Dep. 452-53, Def.'s Mot. Ex. 2.) In addition, the use of inappropriate language was rampant throughout the workplace. Plaintiff testified that her male colleagues would refer to her as "bitch" and "crazy bitch" (Brooks' Continued Dep. 481-82), and that on one occasion her commanding officer said, in reference to Plaintiff, "Bring that bitch in here. I'm going to punch her in her fucking mouth." (*Id*. at 415.) Plaintiff reported this conduct to her superiors. She was told that the "NSF was not for her." (Def.'s Mot. Ex. 15.) Plaintiff's complaints were not forwarded to the Police Department's Equal Employment Opportunity Office for investigation and remediation. (Abrams Dep. 17, Pl.'s Resp. Ex. 2.)

Plaintiff suffered a great deal of animus from her immediate superior in the NSF, Sgt.

---

Facts. (ECF No. 24.) Plaintiff takes issue with Defendant's characterization of the facts as either undisputed or material.

Anthony Burton. Specifically, Sgt. Burton would remove her as the arresting officer so as to credit a male colleague with the arrest. (Brooks' Dep. 60.) In addition, Sgt. Burton failed on occasion to report Plaintiff's earned overtime so that she would be paid for overtime earned. (*Id*. at 89.) Plaintiff also testified that her male colleagues were permitted to use explicit language among themselves and to their superiors, and to refuse to perform ordered tasks. (Brooks' Continued Dep. 434-35.) According to Plaintiff, these actions by her male colleagues did not result in any disciplinary action. (*Id*.) Plaintiff, on the other hand, was disciplined for what Defendant describes as a tirade against Sgt. Burton when he failed to credit Plaintiff for earned overtime pay.

On May 2, 2012, Plaintiff reported Sgt. Burton to Internal Affairs alleging corruption with regard to theft of money from suspected drug dealers. (Brooks Dep. 200-1.) Subsequently at a roll call on May 22, 2012, Sgt. Burton made it clear to Plaintiff that he knew she reported him to Internal Affairs and that he vowed vengeance. (*Id*. at 125.) Thereafter, a verbal altercation between Plaintiff and Sgt. Burton occurred on June 6, 2012. This verbal altercation stemmed from Sgt. Burton's failure to credit Plaintiff for earned overtime pay. On June 7, 2012, Sgt. Burton made a formal request to initiate disciplinary proceedings against Plaintiff. (Pl.'s Resp. Ex. 3.) The June 7 request was followed by a Memorandum, dated June 9, 2012, detailing Sgt. Burton's allegations against Plaintiff and the request that she be detailed out of the NSF. (*Id*.) The June 9 Memorandum notes that Plaintiff informed Sgt. Burton that she "reported" him and called him a "thief." (*Id*.) Captain Fraizer, Sgt. Burton's superior, relied solely upon Sgt. Burton's Memorandum to make the formal request that Plaintiff be detailed out of the NSF. (*Id*.) This request by Captain Fraizer led to Plaintiff's being detailed out of NSF to administrative duty. While on administrative duty, Plaintiff was required to relinquish her police-issued

firearm.  (Pl.'s Resp. Ex. 4.)

On July 2, 2012, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging discrimination on the basis of race, sex, and retaliation stemming from her report of alleged police corruption.  (EEOC Intake Questionnaire, Def.'s Mot. Ex. 14.) Specifically, Plaintiff asserted: "When I refused to go along with illegal behavior, I was treated differently and not allow[ed] overtime, and I was not paid for overtime I worked."  (*Id*.)  On August 3, 2012, Plaintiff filed a formal Charge of Discrimination with the Pennsylvania Human Relations Commission (PHRC).  (Def.'s Mot. Ex. 15.)  Plaintiff again alleged discrimination on the basis of race, sex, and retaliation.  (*Id*.)  In addition, Plaintiff set forth five examples of the discrimination: (1) disparate treatment regarding her use of inappropriate language and being reprimanded, while fellow male colleagues' use of inappropriate language went unpunished, and retaliation resulting from her report of alleged corruption; (2) denial of earned overtime pay by Sgt. Burton; (3) fellow male officer refusing to assist on assignments, and her supervisor failing to address this conduct; (4) a sexually hostile work environment regarding male officers' use of the operations room as a locker room, and openly changing clothes in front of Plaintiff; (5) her supervisor's permitting the use of pornography in the workplace, and after complaining to a supervisor, being told "NSF is not for [her]."  (*Id*.)  The EEOC eventually concluded its investigation without bringing charges.  On October 29, 2013, Plaintiff received her Notice of Right to Sue from the EEOC.  (Def.'s Mot. Ex. 17.)

Plaintiff initiated this litigation by filing a Complaint on January 28, 2014.  (Compl.) Defendant filed its Answer on March 14, 2014 (ECF No. 4), and this case proceeded through discovery.  On December 1, 2014, after concluding discovery, Defendant filed the instant Motion for summary judgment.  (ECF No. 23.)  Plaintiff filed her Response on January 2, 2015.  (ECF

No. 26.)

## II.  LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact is genuinely. . .disputed must support the assertion by; . . .citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.").  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  Finally, as noted above, when deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.  Courts must "not resolve factual disputes or make credibility determinations." *Siegel Transfer, Inc.*, 54 F.3d at 1127.

## III. DISCUSSION

Defendant moves for summary judgment, arguing that Plaintiff failed to exhaust her administrative remedies before the EEOC prior to filing suit, and that Plaintiff cannot establish a *prima facie* case of discrimination, hostile work environment, or retaliation.

### A. Plaintiff's Exhaustion of Administrative Remedies Before the EEOC

Defendant does not contend that Plaintiff completely failed to exhaust her administrative remedies before filing suit. Rather, Defendant argues that Plaintiff failed to exhaust her administrative remedies with respect to four specific allegations of discrimination. Those allegations are: (1) her claim that Sgt. Burton removed her from arrests; (2) her claim that she was unfairly suspended and transferred due to the June 6, 2012 incident; (3) her claim that Officer Watts harassed her in August 2012; and (4) her claim that Officer Waters harassed her in 2014. (Def.'s Mot. 6.) Defendant also argues that certain of these allegations occurred after Plaintiff received her Right to Sue letter, and therefore Plaintiff should be precluded from including those claims in this lawsuit. (*Id.*)

It is well settled that a plaintiff proceeding with claims under Title VII and the PHRA must first exhaust her administrative remedies before the EEOC and PHRC before filing suit. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 926-27 (3d Cir. 1997). However, "[a] victim of discrimination is not required to exhaust administrative remedies with respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it, provided that the victim can still bring suit on the earlier complaint." *Waiters v. Parsons*, 729 F.2d 233, 235 (3d Cir. 1984) (per curium). Under *Waiters*, two circumstances exist where events taking place subsequent to the filing of a complaint "may be considered as fairly encompassed within that complaint, either where the incident (1) falls

within the scope of a prior EEOC complaint, or (2) falls within the scope of the EEOC 'investigation which arose out of it.'" *Robinson v. Dalton*, 107 F.3d 1018, 1025 (3d Cir. 1997) (quoting *Waiters*, 729 F.2d at 235).

The recent decision of *Gardner-Lozada v. SEPTA*, No. 13-2755, 2014 WL 6633195 (E.D. Pa. Nov. 24, 2014) is instructive. In *Gardner-Lozada*, a plaintiff asserting claims pursuant to Title VII and the PHRA alleged discriminatory events that occurred after her filing of the Charge of Discrimination. *Id*. at *6. The plaintiff did not seek to amend her Charge. *Id*. The court held that the core grievances of gender discrimination and retaliation were the same, and thus would have been fairly encompassed within an EEOC investigation. *Id*. While noting that the failure to amend the Charge of Discrimination to include these additional events was "hardly the best practice," the court concluded that the failure to amend in that instance did not operate to bar the claims. *Id.*; *Cf. Rajis v. Brown*, No. 96-6889, 1997 WL 535152, at *5 (E.D. Pa. Aug. 14, 1997) (denying dismissal of harassment claims not presented in the administrative setting because "the same evidence which supports [plaintiff's] discrimination claims similarly supports her harassment claims").

In this case, Plaintiff has maintained since the filing of the initial complaint with the EEOC that she suffered discrimination, a hostile work environment, and retaliation. Each of the four specific instances that Defendant contends are not contained within the Charge of Discrimination are not new "claims"; rather, these identified instances are events that go to the heart of Plaintiff's previously asserted claims. Plaintiff's alleged removal from arrests, harassment by Officer Watts in August 2012, and harassment by Officer Waters in 2014 are each probative of Plaintiff's claims of discrimination and hostile work environment on the basis of her gender. Moreover, Plaintiff's detail out of the NSF stemming from the June 6, 2012 incident is

probative of Plaintiff's claim of retaliation. Three of the alleged acts—removal from arrests, harassment in August 2012, and suspension and transfer—all involve individuals that Plaintiff has already identified as principal sources of discrimination, hostile work environment, and retaliation, specifically Sgt. Burton and Officer Watts. Moreover, the complaint of harassment by Officer Waters in 2014 would have been fairly encompassed within the EEOC investigation, as the allegations are consistent with the other allegations of harassment that Plaintiff has asserted. Even though these events may differ from other events identified by Plaintiff in her Charge of Discrimination, the core grievances—discrimination, hostile work environment, and retaliation—are the same. *See Waiters*, 729 F.2d at 238.

"[T]he policy of promoting conciliation would not be furthered by allowing the defendant[] to delay having to answer in court for retaliatory[, discriminatory, and harassing] action allegedly taken against [Plaintiff]." *Id*. We agree with the language of the court in *Gardner-Lozada*, that "failing to amend a Charge of Discrimination to reflect subsequent acts of alleged discrimination or retaliation is hardly the best practice." 2014 WL 6633195 at *6. Nevertheless, we will not preclude Plaintiff from presenting these allegations to a jury. Accordingly, Defendant's Motion as to the issue of exhaustion of administrative remedies will be denied.

**B. Plaintiff's Claims of Hostile Work Environment**

Defendant next contends that Plaintiff cannot establish a claim for hostile work environment. Specifically, Defendant argues that there is no evidence establishing that any of Plaintiff's proffered instances of a hostile work environment are gender based.

In order to establish the existence of a hostile work environment under Title VII, Plaintiff must establish the following elements: "(1) the employees suffered intentional discrimination

because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990) (citations omitted) (footnote omitted).  Element number 3 is a subjective standard while element number 4 is an objective standard.  "The subjective factor is crucial because it demonstrates that the alleged conduct injured this particular plaintiff giving her a claim for judicial relief.  The objective factor, however, is the more critical for it is here that the finder of fact must actually determine whether the work environment is sexually hostile." *Id*. at 1483.  With regard to the fifth element, agency principles apply and "liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." *Id*. at 1486 (quoting *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989)).  The totality of the circumstances must be examined in order to determine whether a work environment is "hostile" for Title VII purposes.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  Circumstances to be examined include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.

"To make out a case under Title VII it is 'only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff had been a man she would not have been treated in the same manner.'" *Andrews*, 895 F.2d at 1485 (quoting *Tomkins v. Public Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1047 n.4 (3d Cir. 1977)).  Conduct other than explicit sexual advances may constitute intimidating and hostile conduct toward women because they are women.  *Id*. (citations omitted).  Specifically, the Third Circuit has observed "that the pervasive

use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment." *Id*. (citations omitted). Furthermore, the posting of pornographic pictures in a plaintiff's workspace may constitute evidence of a hostile environment. *Id*. "Obscene language and pornography quite possibly could be regarded as 'highly offensive to a woman who seeks to deal with her fellow employees and clients with professional dignity and without the barrier of sexual differentiation and abuse.'" *Id*. at 1485-86 (quoting *Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir. 1988)).

In this case, Plaintiff raises issues of material fact sufficient to defeat Defendant's summary judgment Motion. Plaintiff testified regarding the pervasive presence of pornography within the workplace, the fact that she in particular was subjected to derogatory and insulting language from her colleagues, and the male "locker room" atmosphere that comprised her main work area. Any one of these circumstances alone, and certainly all taken together, are sufficient to establish that Plaintiff suffered a hostile work environment on account of her gender. *Andrews*, a case also involving the Philadelphia Police Department, and with facts not too dissimilar from the instant case, counsels that the evidence taken as a whole must be examined to see if it "produce[s] a work environment hostile and offensive to women of reasonable sensibilities." *Id*. at 1486. That determination in this case is one that is within the province of the jury. Furthermore, Plaintiff's testimony with regard to the frequency with which these events occurred raises questions as to whether Plaintiff's superiors knew, or should have known, that they were occurring. Indeed, Plaintiff testified that when she raised concerns regarding these activities to a superior, she was told "NSF was not for her." (Def.'s Mot. Ex. 15.) And upon raising these concerns to Captain Abrams, a superior, the complaints were not forwarded to the Police Department's Equal Employment Opportunity Office. (Abrams Dep. 17, Pl.'s Resp.

Ex. 2.) A police station certainly need not be run like a day care center. "[I]t should not, however, have the ambience of a nineteenth century military barracks." *Andrews*, 895 F.2d at 1486.

Defendant counters that even assuming these events to be true, it did not affect Plaintiff's work and therefore should not be considered to constitute a hostile work environment. The fact that Plaintiff persevered in her job does not mean that she was not detrimentally affected by the work environment. Moreover, it is hard to see how any woman would not have been detrimentally affected by this environment. We are satisfied that there are genuine issues of material fact as to the nature and effect of this work environment. Accordingly, Defendant's Motion as to Plaintiff's hostile work environment claim will be denied.

**C. Plaintiff's Claims of Discrimination and Retaliation**

Finally, Defendant contends that Plaintiff has failed to establish a *prima facie* case of discrimination and retaliation. Specifically, Defendant argues that Plaintiff is unable to establish that she suffered an adverse employment action, a requirement for both discrimination and retaliation, and, with regard to her claim of retaliation, Defendant argues that there is no causal connection between her protected activity and the adverse action she alleges.

*1. Claim of Discrimination*[2]

To establish a *prima facie* case of discrimination, a plaintiff must show that: "(1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably." *Burton*

[2] Although Plaintiff's claim for discrimination under the PHRA is not discussed at length here, "[t]he proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (citation omitted). Accordingly, our conclusion as to Plaintiff's claim for discrimination under Title VII applies equally to Plaintiff's claim for discrimination under the PHRA.

*v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citing *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)); *see also McDonnell Douglas v. Green*, 411 U.S. 792, 802-03 (1973). "The existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the Court." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam).

If a plaintiff establishes a *prima facie* case, a "relatively light" burden is placed upon the defendant. This burden is satisfied "if the employer provides evidence, which if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426 (citations omitted). When the defendant satisfies this burden, the burden then shifts back to the plaintiff to proffer some evidence "from which a factfinder reasonably could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id*. at 427 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). Plaintiff may show "that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Jones v. School Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (bracketed text original) (quoting *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998)).

In this case, Defendant challenges only Plaintiff's ability to establish that she suffered an adverse employment action. (Def.'s Mot. 13). An adverse employment action may be the "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S.

742, 761 (1998); *see also Cardenas v. Massey*, 269 F.3d 251, 267 n.10 (3d Cir. 2001) (a "tangible employment action" is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."). "[A] transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action." *Torre v. Casio, Inc.*, 42 F.3d 825, 831 n.7 (3d Cir. 1994) (citing *Collins v. Illinois,* 830 F.2d 692, 702-04 & 702 n.7 (7th Cir. 1987)); *see also Jones*, 198 F.3d at 411-12.

Plaintiff has offered evidence sufficient for a jury to conclude that she suffered an adverse employment action. Plaintiff's detail out of the specialized and respected NSF unit to administrative desk duty, and the required relinquishment of her weapon, constitutes a significant change in her employment status that rises to the level of an adverse employment action. Indeed, several circuit courts have found the existence of adverse employment actions based upon strikingly similar facts. *See Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005) (holding police officer's transfer from position as a K-9 officer to an administrative position constituted an adverse employment action because the administrative position "significantly altered his duties. . .carried much less prestige. . .and [forced him] to turn over his weapon, thereby preventing him from performing many of the normal duties of a police officer"); *Shockency v. Ramsey Cnty.*, 493 F.3d 941, 948-49 (8th Cir. 2007) (holding a transfer to a role with significantly less responsibility, and ultimately to a role of desk work without the ability to earn overtime pay, constituted an adverse employment action). Plaintiff has offered evidence sufficient to establish a *prima facie* case of discrimination.

The burden shifts to Defendant, which claims that it "clearly had a legitimate, non-discriminatory reason for investigating disciplinary charges and failing to respond to the alleged

hostile work environment." (Def.'s Mot. 15.) Defendant contends that it had a legitimate, non-discriminatory reason to investigate and discipline Plaintiff for insubordination and unbecoming conduct relative to the June 6, 2012 incident with Sgt. Burton. (Def.'s Mot. 15-16.) Assuming that to be true, Plaintiff has rebutted this reason by offering evidence tending to show that she was treated more harshly than her male colleagues for engaging in similar conduct. For example, Plaintiff points to disciplinary records for certain of Plaintiff's male colleagues from which a jury may infer that they received more favorable treatment than Plaintiff received. (Pl.'s Resp. Ex. 5.) These disciplinary records, on their face, tend to show that Plaintiff's male colleagues were not disciplined as harshly as Plaintiff. (*Id*.) Plaintiff also testifies that her male colleagues never received discipline rising to the level of suspension and transfer to administrative duty for their regular and pervasive use of obscene language and for talking back to superiors. (Brooks Dep. 435.) Defendant's explanation for the actions taken against Plaintiff may ultimately prevail. "That, however, is not the point. Rather, looking at the facts in the light most favorable to [Plaintiff] and drawing all reasonable inferences in [her] favor, the evidence at [this] summary judgment [stage] demonstrate[s] that [s]he could persuade a reasonable jury that [Defendant's] proffered reasons for the transfer [are] not worthy of credence." *Torre*, 42 F.3d at 833. Accordingly, Defendant's Motion as to Plaintiff's claim for discrimination will be denied.

*2. Claim of Retaliation*

Similar to the claim for discrimination, Defendant contends that Plaintiff cannot establish a *prima facie* case of retaliation because she cannot establish that she suffered an adverse employment action, and there is no causal connection between her protected activity and the action she suffered. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer

took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation and internal quotation marks omitted). With regard to the first element, Defendant stipulates that Plaintiff engaged in a protected activity by reporting Sgt. Burton's alleged theft of money from drug suspects to Internal Affairs. (Def.'s Mot. 14.)  With regard to the second element, as discussed above, Plaintiff has provided sufficient evidence that she suffered an adverse employment action.  Therefore, our analysis focuses on the causal connection between the protected activity and the adverse action taken against Plaintiff.

On May 4, 2012, Plaintiff reported Sgt. Burton to Internal Affairs alleging corruption with regard to theft of money from suspected drug dealers.  On May 22, 2012, Sgt. Burton made it very apparent to Plaintiff that he knew that she had reported him to Internal Affairs and he vowed retaliation.  Thereafter, a verbal altercation between Plaintiff and Sgt. Burton occurred on June 6, 2012.  Following the June 6, 2012 incident, Sgt. Burton made a formal request on June 7, 2012 to initiate disciplinary proceedings against Plaintiff.  He followed up that request on June 9, 2012, with a Memorandum detailing his allegations against Plaintiff and requesting that she be detailed out of the NSF.  The June 9, 2012 Memorandum notes that Plaintiff informed Sgt. Burton that she "reported" him and called him a "thief."  (Pl.'s Resp. Ex. 3.)  Captain Fraizer, explicitly relied upon Sgt. Burton's Memorandum, incorporating it by reference in her formal request to the Chief Inspector of the Narcotics Bureau that Plaintiff be detailed out of the NSF. This request by Captain Fraizer resulted in Plaintiff's detail out of the NSF.

Based upon Plaintiff's testimony and the timeline of events, a jury certainly could conclude that there is a causal connection between Plaintiff's report of corruption in May of

2012, and the events that led to her later detail out of the NSF. Plaintiff's testimony suggests that as of May 22, 2012, Sgt. Burton intended to retaliate against her for reporting him to Internal Affairs, and that he seized upon the June 6, 2012 incident to do so. The passage of time, which was just over one month, between the report to Internal Affairs and Sgt. Burton's request that put Plaintiff's detail out of the NSF in motion does not negate the causal connection between the events. The statements made by Sgt. Burton on May 22, 2012, along with the intervening events and the short period of time clearly suggest a causal connection. *See Williams v. Phila. Housing Auth. Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) ("[W]here the temporal proximity is not so close as to be unduly suggestive, we have recognized that timing plus other evidence may be an appropriate test.") (internal quotation marks and citations omitted). Based upon the totality of the circumstances, there is sufficient evidence for Plaintiff to proceed with her retaliation claim.[3] Defendant's Motion as to this claim will be denied.

**D. Plaintiff's Claims on the Basis of Race**

As a final matter, Plaintiff's Complaint asserts claims for hostile work environment, discrimination, and retaliation based upon gender *and* race. Plaintiff's completed EEOC Intake Questionnaire and Charge of Discrimination both reflect that Plaintiff checked a box that alleged discrimination based upon race and sex. (Def.'s Mot. Exs. 14 & 15.) However, Plaintiff's EEOC Intake Questionnaire makes substantive reference only to her report to Internal Affairs of alleged corruption, and her Charge of Discrimination explicitly states, in her words, "I believe

[3] While Defendant does not argue that it cannot be liable for Sgt. Burton's actions, because he is a nondecisionmaker, Plaintiff correctly notes that Defendant may be held liable under a "cat's paw" theory of liability. Under such a theory of liability, the ultimate test is one of proximate causation where the nondecisionmaker's (Sgt. Burton) actions so influence the ultimate adverse action made by the decisionmaker (Captain Fraizer). *See Burlington v. News Corp.*, --- F. Supp. 3d. ---, 2014 WL 5410062, at *7-8 (E.D. Pa. 2014) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)). *Staub's* analysis applies in Title VII cases. *Id*. at *8.

that I have been subjected to discriminatory actions because of my sex (female)." (*Id*.) Indeed, Plaintiff's Response to Defendant's Motion for Summary Judgment makes repeated references only to claims based upon her gender. (Def.'s Mot. 1 (Plaintiff "was singled out and punished because of her gender."); *id*. at 2-6 (describing discrimination and harassment based solely upon Plaintiff's gender, not her race); *id*. at 7 *("[T]he essence of [P]laintiff's claims is that she was a female police officer who was subject to institutional discrimination and retaliation*.") (emphasis added); *id*. at 9-10 (detailing disparate disciplinary treatment between Plaintiff, as a female officer versus her male colleagues); *id*. at 11-15 (detailing a sexually hostile work environment).) Nowhere within Plaintiff's Response is there a reference to, let alone an evidentiary showing, that her claims are in fact based upon race. The record presented here leaves little doubt that this case is premised upon gender based discrimination and harassment, not race. Because Plaintiff has failed to provide any evidence in support of her race based claims, and because her Response to Defendant's Motion makes clear that her case is limited to gender based claims, Defendant's Motion will be granted as to Plaintiff's race based claims.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion will be denied as to all gender based claims, and granted as to all race based claims.

An appropriate Order follows.

**BY THE COURT:**

**/R. Barclay Surrick**

**R. BARCLAY SURRICK, J.**